UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LHF PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LYNDA GUEITS, an individual; <br> CHRIS VANDERYACHT, an individual; <br> RACHEL LEONARDINI, an individual; <br> JONATHAN COPPETTI, an individual; <br> GREGORIO BENITEZ VELASCO, an individual; <br> LUTHER DANIELS, an individual; and <br> KRISTIN WHITE, an individual; <br><br> Defendants. | CASE NO. C16-1089RSM <br><br> ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Default Judgment against Defendants. Dkt. #70. Having reviewed the relevant briefing and the remainder of the record and for the reasons discussed below, Plaintiff's Motion is granted in part.

## II. BACKGROUND

Plaintiff's motion for default judgment is just one of more than fifty default judgment motions filed by Plaintiff in eighteen related cases before the Court.[1] All eighteen cases assert

---

[1] *See* Case Nos. C16-551RSM, C16-552RSM, C16-621RSM, C16-623RSM, C16-731RSM, C16-864RSM, C16-865RSM, C16-1015RSM, C16-1017RSM, C16-1089RSM, C16-1090RSM, C16-1175RSM, C16-1273RSM, C16-1354RSM, C16-1588RSM, C16-1648RSM, C17-254RSM, and C17-782RSM.

ORDER – 1

the same cause of action. Plaintiff alleges that close to two hundred named defendants unlawfully infringed its exclusive copyright to the motion picture *London Has Fallen*, which it developed and produced, by copying and distributing the film over the Internet through a peer-to-peer network using the BitTorrent protocol. Plaintiff uncovered the identities of the alleged infringers after serving several internet service providers ("ISPs") with subpoenas issued by the Court. Amended complaints identifying the alleged infringers were subsequently filed.

Defendants Lynda Gueits, Chris Vanderyacht, Rachel Leonardini, Jonathan Coppetti, Gregorio Benitez Velasco, Luther Daniels, and Kristin White (collectively "Defendants"), are named in the same Amended Complaint because, given the unique identifier associated with a particular digital copy of *London Has Fallen*, along with the timeframe when the internet protocol address associated with Defendants accessed that unique identifier, Plaintiff alleges Defendants were all part of the same "swarm" of users that reproduced, distributed, displayed, and/or performed the copyrighted work. Dkt. #12 at ¶¶ 10, 30–36, 41, 46. According to Plaintiff, "[t]he temporal proximity of the observed acts of each Defendant, together with the known propensity of BitTorrent participants to actively exchange files continuously for hours and even days, makes it possible that Defendants either directly exchanged the motion picture with each other, or did so through intermediaries . . . ." *Id*. at ¶ 36.

Defendants have not participated in this action and default was entered against each. Dkts. #57–63. Plaintiff now seeks default judgment against Defendants. Dkt. #70.

### III.  DISCUSSION

Based on this Court's Orders of Default and pursuant to Rule 55(a), the Court has the authority to enter a default judgment. Fed. R. Civ. P. 55(b). However, prior to entering default judgment, the Court must determine whether the well-pleaded allegations of a plaintiff's

ORDER – 2

complaint establish a defendant's liability. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In making this determination, courts must accept the well-pleaded allegations of a complaint, except those related to damage amounts, as established fact. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). If those facts establish liability the court may, but has no obligation to, enter a default judgment against a defendant. *Alan Neuman Prods. Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("Clearly, the decision to enter a default judgment is discretionary."). Plaintiffs must provide the court with evidence to establish the propriety of a particular sum of damages sought. *Televideo*, 826 F.2d at 917–18.

A. Liability Determination.

The allegations in Plaintiff's Amended Complaint establish Defendants' liability for copyright infringement. To establish copyright infringement, Plaintiff must demonstrate ownership of a valid copyright and that Defendants copied "constituent elements of the work that are original." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Here, Plaintiff alleges it owns the exclusive copyright to the motion picture *London Has Fallen*. Dkt. #12 at ¶¶ 5–9. Plaintiff also alleges that Defendants all participated in the same "swarm" that unlawfully copied and/or distributed the same digital copy of *London Has Fallen*. Dkt. #12 at ¶¶ 10, 30–36, 41, 46. Because Defendants did not respond to Plaintiff's Amended Complaint, the Court must accept the allegations in Plaintiff's Amended Complaint as true. *See* Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff has established Defendants' liability.

B. Default Judgment is Warranted.

The Court must next determine whether to exercise its discretion to enter a default judgment. Courts consider the following factors in making this determination:

ORDER – 3

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.

The majority of these factors weigh in favor of granting default judgment against Defendants. Plaintiff may be prejudiced without the entry of default judgment as it will be left without a legal remedy. *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (finding plaintiff would suffer prejudice where denying default judgment would leave plaintiff without remedy). Plaintiff's Amended Complaint is also sufficient and Defendant did not present any evidence or argument to the contrary. Additionally, the Court finds there is a low probability that Defendant's default was due to excusable neglect; Defendant was given ample opportunity to respond to the filings in this matter between the time she was served with Plaintiff's Amended Complaint and when Plaintiff filed its motion for default judgment. Finally, although there is a strong policy favoring decisions on the merits, the Court may consider Defendant's failure to respond to Plaintiff's Amended Complaint and Plaintiff's subsequent motions as an admission that Plaintiff's motions have merit. *See* Local Civil Rule 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

However, the Court acknowledges that a dispute concerning the material facts alleged by Plaintiff may arise. *See Qotd Film Inv. Ltd. v. Starr*, No. C16-371RSL, 2016 WL 5817027, at *2 (W.D. Wash. Oct. 5, 2016) (acknowledging that a dispute concerning material facts may arise in BitTorrent infringement cases). The Court also acknowledges that the amount at stake is not modest, as Plaintiff contends. Plaintiff seeks enhanced statutory damages in the amount of

ORDER – 4

$2,500, along with $1,069.50 in attorneys' fees, and costs ranging from $92 to $142, for each named Defendant in this matter. Dkt. #70 at 4; Dkt. #72-1[2] at ¶¶ 11–14. Notwithstanding these considerations, the *Eitel* factors weigh in favor of granting default judgment against Defendants.

C. Appropriate Relief.

The Court next considers what relief to grant Plaintiff. Plaintiff seeks the following three categories of relief from Defendants: (1) permanent injunctive relief; (2) statutory damages; and (3) attorneys' fees and costs. Each category is discussed in turn below.

  i. *Permanent Injunctive Relief*

Permanent injunctive relief is proper in this matter. Section 502(a) of Title 17 of the United States Code allows courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." As part of a default judgment, courts may also order the destruction of all copies of a work made or used in violation of a copyright owner's exclusive rights. 17 U.S.C. § 503(b). Given the nature of the BitTorrent system, and because Defendants have been found liable for infringement, the Court finds Defendants possesses the means to continue infringing in the future. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (granting permanent injunction where "liability has been established and there is a threat of continuing violations"). Consequently, the Court grants Plaintiff's request for a permanent injunction against Defendants. The Court will issue a permanent injunction enjoining Defendants from infringing Plaintiff's rights in *London*

---

[2] Plaintiff filed a declaration by Mr. Lowe in support of its Motion for Default Judgment. Dkt. #71. Plaintiff subsequently filed a praecipe to Mr. Lowe's declaration indicating that it corrected typographical errors. Dkt. #72. It appears that the corrected declaration actually corrected a math error, substantively changing the fees requested by Plaintiff. Nevertheless, the Court accepts Mr. Lowe's amended declaration and considers it pursuant to Local Rule 7(m).

ORDER – 5

*Has Fallen*. The Court will also order Defendants to destroy all unauthorized copies of *London Has Fallen*.

ii. *Statutory Damages*

The Court will also award Plaintiff $750 in statutory damages for Defendants' infringement of the same "seed" file of *London Has Fallen*. The Copyright Act allows a plaintiff to choose between actual or statutory damages. *See* 17 U.S.C. §§ 504(b), (c)(1). The range of statutory damages allowed for all infringements involved in an action, with respect to any one work for which any two or more infringers are jointly and severally liable, is $750 to $30,000. 17 U.S.C. §504(c)(1). District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima," and they can take into account whether "the recovery sought is proportional to the harm caused by defendant's conduct." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1355 (9th Cir. 1984); *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quoting *Landstar*, 725 F. Supp. 2d at 921). Because Defendants in this action were alleged to have conspired with one another to infringe the same digital copy of Plaintiff's motion picture, the Court will award the sum of $750 for Defendants' infringement of the same digital copy of *London Has Fallen*. Each of the Defendants is jointly and severally liable for this amount.

Plaintiff argues that a joint and several statutory damage award of $2,500 should be awarded. Plaintiff argues that an increased award is justified because of the number of Defendants involved and that "each obtained a separate copy of the movie." Dkt. #70 at 4.[3] But

---

[3] Plaintiff also argues for an increased statutory damage award because judgment has been entered against Defendant Kristin White in a different BitTorrent case. *Criminal Prods., Inc. v. Luurs et al.*, C16-1352RAJ, Dkt. #77 (W.D. Wash. Aug. 1, 2017). However, the judgment in that case occurred well after the conduct in the current case and therefore does not demonstrate that Ms. White was undeterred by a minimum statutory damages award or that she will be undeterred by such an award in this case.

ORDER – 6

this argument cuts directly against Plaintiff's Amended Complaint in which it alleges that "each Defendant participated in a swarm and/or reproduced and/or distributed the same seed file of *London Has Fallen*." Dkt. #12 at ¶ 46 (underline emphasis added). Further, statutory damages are not intended to serve as a windfall to plaintiffs, and enhanced statutory damages are not warranted where plaintiffs do not even try to demonstrate actual damages. Additionally, the Court notes that Plaintiff has not shown that any of the Defendants is responsible for the "seed" file that provided Plaintiff's copyrighted work on the BitTorrent network, and Plaintiff has not presented evidence that Defendants profited from the infringement. More importantly, the Ninth Circuit has determined that holding Defendants jointly and severally liable for a single award of $750 is proper. *LHF Prods. Inc. v. Doe 1*, ___ F. App'x ____, 2018 WL 3017156 (9th Cir. June 18, 2018).[4]

iii. *Attorneys' Fees and Costs*

Finally, Plaintiff asks the Court to award $1,069.50 in attorneys' fees and between $92 and $142 in costs against Defendants individually. Dkt. #72-1 at ¶¶ 11–14. Pursuant to 17 U.S.C. § 505, the Court "in its discretion may allow the recovery of full costs by or against any party," and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."

The Court agrees that Plaintiff should be awarded attorneys' fees. Courts consider several factors, including "(1) the degree of success obtained, (2) frivolousness, (3) motivation, (4) objective unreasonableness (legal and factual), and (5) the need to advance considerations of compensation and deterrence," when making attorneys' fee determinations under the Copyright Act. *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (citing *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)). Because Plaintiff has succeeded on its non-frivolous claims, and because

---

[4] The Ninth Circuit's Memorandum decision applied to Ninth Circuit Case Nos. 17-35237; 17-35243; 17-35249; 17-35250; and 17-35253.

ORDER – 7

an award would advance considerations of compensation and deterrence, Plaintiff is entitled to attorneys' fees.

However, Plaintiff's attorneys' fees request is problematic. Courts determine fee award amounts by first determining a "lodestar figure," which is obtained by multiplying the number of hours reasonably expended on a matter by the reasonable hourly rate. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). Courts may then adjust the lodestar with reference to factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975). The relevant *Kerr* factors here are: (1) the time and labor required; (2) the novelty and difficulty of the questions; and (3) the skill requisite to perform the legal services properly. "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel*, 6 F.3d at 622. Given the nature of the work done by Plaintiff's counsel, Mr. Lowe, the Court does not find Plaintiff's requested hourly rate, or the number of hours requested, to be reasonable.

1. *Reasonableness of Rate Requested*

In the Ninth Circuit, the determination of a reasonable hourly rate "is not made by reference to rates actually charged the prevailing party." *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986). Instead, the reasonable hourly rate is determined with reference to the prevailing rates charged by attorneys of comparable skill and experience in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Courts may also consider "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney"

ORDER – 8

as "satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiff argues that $450 is a reasonable rate for "non-formulaic legal work" [5] but requests $350 for Mr. Lowe's routine work. Dkt. #70 at 5–6. However, similar cases in this District suggest that a lower rate is appropriate. *See Qotd Film*, 2016 WL 5817027 at *3-4 (refusing to award requested rate of $450 where Mr. Lowe did not present evidence that this was prevailing community rate). Notably, in two unrelated BitTorrent cases litigated by Mr. Lowe, this Court has awarded Mr. Lowe a rate of $350 and $300 for work similar, if not identical, to the work done in this matter. *See Id*. (finding an hourly rate of $350 to be reasonable for Mr. Lowe's work in a nearly identical case); *also Dallas Buyers Club, LLC v. Nydam, et al.*,[6] 2016 WL 7719874, at *5-6 (W.D. Wash. August 8, 2016) (finding an hourly rate of $300 to be reasonable for Mr. Lowe's work in a nearly identical case). In *Dallas Buyers Club*, the Court reasoned that an hourly rate of $300 is far more appropriate because the cases litigated by Mr. Lowe did not require extensive skill or experience. *Id.* at *6. Indeed, it appears that in litigating *Dallas Buyers Club*, Mr. Lowe—similar to his actions in this case—recycled pleadings used in other cases and encountered little or no opposition from the named Defendants. *Id*. Given that Mr. Lowe's work in this matter amounts to nothing more than form pleading, the Court adopts the reasoning of other BitTorrent cases in this District and will reduce Mr. Lowe's hourly rate to $300.

---

[5] Interestingly, Mr. Lowe does not claim to have performed any "non-formulaic legal work" in this case and the argument is just a holdover from Mr. Lowe's other form documents. *See* Dkt. #57-1 (only utilizing a billing rate of $350).

[6] The Court entered a single order for related case Nos.: C14-1684RAJ; C14-1926RAJ; C15-133RAJ; C15-576RAJ; C15-579RAJ; C15-581RAJ; and C15-582RAJ.

ORDER – 9

An hourly rate of $300 is also reasonable in this case as it is consistent with the hourly rate the Court found appropriate in Plaintiff's related cases. *See* C16-551RSM, Dkt. #70; C16-1017RSM, Dkt. #78. More importantly, the Ninth Circuit has affirmed this Court's determination that $300 represents a reasonable hourly rate for the work performed by Mr. Lowe in identical cases.[7] *LHF Prods. Inc.*, 2018 WL 3017156 at *1–2.

  2. *Reasonableness of Hours Requested*

Turning to the reasonableness of the hours requested, the Court notes the party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The Court also excludes hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id*. at 434. Further, the Ninth Circuit has held that it is reasonable for a district court to conclude that the party seeking attorneys' fees fails to carry its burden of documenting the hours expended when that party engages in "block billing" because block billing makes it more difficult to determine how much time was spent on particular activities. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

Mr. Lowe requests an unreasonable number of hours. In support of his attorneys' fees request, Mr. Lowe submits a declaration requesting compensation for 2.6 hours he allegedly spent on work related to each Defendant. Dkt. #72-1 at ¶ 11. Mr. Lowe also requests fees for the time his legal assistant spent on each Defendant's case (at an hourly rate of $145). Dkt. #72-1 at ¶ 11. But Mr. Lowe's activity within this District underscores the unreasonableness of this request.

---

[7] Mr. Lowe points to recent surveys of average billing rates to argue that a higher rate is reasonable. Dkt. #72-1 at ¶ 7. But these general sources are not inconsistent with the Court's earlier findings that $300 is a reasonable hourly rate, within this District, for the type of work performed in these cases. Nor is the Court persuaded that it should utilize two different rates depending on the "formulaic" nature of the work performed. Dkt. #72-1 at ¶ 8.

ORDER – 10

Since April 2016, Mr. Lowe has represented Plaintiff in eighteen cases against hundreds of Doe Defendants.[8] These cases have all proceeded in a similar manner. Each of the complaints originally filed in these eighteen cases lists Doe Defendants, identified only by IP addresses, and alleges infringement of Plaintiff's exclusive rights in the motion picture *London Has Fallen*. Groups of Doe Defendants are named in the same complaint because they allegedly infringed the same digital copy of *London Has Fallen* by participating in the same BitTorrent "swarm." After nearly identical complaints were filed, Plaintiff, in all eighteen cases, filed nearly identical motions for expedited discovery. Once the Court granted Plaintiff's motions for expedited discovery, Plaintiff then served subpoenas on the ISPs associated with each Doe Defendant's IP address. Once the ISPs provided Plaintiff with the Doe Defendants' identities, Plaintiff filed amended complaints. Except for the paragraphs identifying the Doe Defendants, all of the amended complaints are identical. In all, Plaintiff has named 185 defendants.

After amending its complaints, Plaintiff voluntarily dismissed claims against some named defendants—presumably because they paid Plaintiff some sum. If a claim is not settled, Plaintiff continues to pursue its claim against the named defendants. Many of the remaining defendants as in this case, have not answered Plaintiff's amended complaints. A named defendant's failure to respond to Plaintiff's amended complaints then prompts Plaintiff to file a motion for default. To date the Court has granted ninety of Plaintiff's motions for default in seventeen of Plaintiff's eighteen cases. Except for the captions, the motions for default are generally identical. After the Court grants Plaintiff's motions for default, Plaintiff files nearly identical motions for default judgment.

---

[8] *See* Case Nos. C16-551RSM, C16-552RSM, C16-621RSM, C16-623RSM, C16-731RSM, C16-864RSM, C16-865RSM, C16-1015RSM, C16-1017RSM, C16-1089RSM, C16-1090RSM, C16-1175RSM, C16-1273RSM, C16-1354RSM, C16-1588RSM, C16-1648RSM, C17-254RSM, and C17-782RSM.

ORDER – 11

While there is nothing wrong with Plaintiff's filing of several infringement claims, it is wrong for Plaintiff's counsel to file identical complaints and motions with the Court and then expect the Court to believe that it spent *hundreds* of hours preparing those same complaints and motions. *See Malibu Media, LLC v. Schelling*, 31 F. Supp. 3d 910, 912-13 (E.D. Mich. 2014) ("If Malibu Media is experiencing a massive invasion of infringers, it is entitled to seek redress through the courts."). As this Court has previously noted in a related case, it was not reasonable for Mr. Lowe to assert that he spent 185 hours in preparing the filings for default judgments against fifty-one named defendants when the filings were essentially the same. C16-551RSM, Dkt. #70 at 12.

There is nothing unique, or complex, about engaging in what can only be described as "the essence of form pleading," and the Court will not condone unreasonable attorneys' fees requests. *Malibu*, 31 F. Supp. 3d at 912-13 ("[T]here is nothing unique about this case against [defendant], it is quite a stretch to suggest that drafting and preparing the complaint for filing took more than an hour, or that 1.3 hours were spent on drafting a motion for default judgment."). Further, the Court finds it hard to believe that Mr. Lowe spent significant amounts of time preparing filings in this case and Plaintiff's related cases as the filings are nearly identical to filings Mr. Lowe has previously used in other unrelated cases. *See, e.g.*, *QOTD Film Investment Ltd. v. Doe 1 et al.*, Case Nos. C16-371RSL (W.D. Wash. 2016) and *Dallas Buyers Club, LLC v. Does 1-10*, C14-1684RAJ (W.D. Wash. 2014).

Instead of awarding the unreasonable number of hours requested by Plaintiff, the Court will award Mr. Lowe 2 hours, at an hourly rate of $300, to compensate his firm for the time he worked on the case against each Defendant.[9] The Court will not award any of the time attributed

---

[9] The Court notes that a reduction in hours claimed is also appropriate as time appears inflated. Mr. Lowe filed motions for default in five of Plaintiff's cases before this Court on the same day—

ORDER – 12

to Mr. Lowe's legal assistant as review of the declaration submitted indicates that Mr. Lowe's legal assistant performed purely administrative tasks in this matter. Dkt. #72-1 at ¶ 11 (descriptions include "[p]repare, waivers, request to waive summons and complaint exhibits, and waivers . . . [r]eview and update docket regarding same" and "[p]repare summons . . . [r]eview and update docket reminders regarding same").

Accordingly, the Court has adjusted Plaintiff's request of 2.6 hours to 2 hours at an hourly rate of $300. The Court is satisfied that an attorneys' fee award of $600 as to each Defendant is reasonable and sufficient to cover Mr. Lowe's form-pleading work in this case. The requested costs from each named Defendant is also properly recovered in full.

### IV. CONCLUSION

The Court, having reviewed the relevant briefing and the remainder of the record, finds adequate bases for default judgment. Accordingly, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Default Judgment against Defendants (Dkt. #70) is GRANTED IN PART.
2. Defendants are hereby permanently enjoined from directly, indirectly, or contributorily infringing Plaintiff's exclusive rights in the motion picture film *London Has Fallen*, including without limitation by using the Internet to reproduce or copy *London Has Fallen*, to distribute *London Has Fallen*, or to make *London Has Fallen* available for

---

July 2, 2018. *See* C16-551RSM, C16-1017RSM, C16-1089RSM, C16-1090RSM, and C16-1588RSM. Combined, Plaintiff's motions sought default judgment against 21 defendants. With regard to each defendant, Mr. Lowe claims to have spent precisely 0.7 hours on the motions for default on July 2, 2018—itself odd. *See e.g.*, C16-1588RSM, Dkt. #61-1 at ¶ 11. Accordingly, Mr. Lowe claims to have billed 14.7 hours on that day. While not outside the realm of possibility, the Court has some concern as to the accuracy of this contention. Plaintiff's last motion for default judgment was filed at 7:14 p.m. on July 2, 2018. *See* C16-1588RSM, Dkt. #59. Thus, giving Mr. Lowe the benefit of the doubt and assuming that he worked continuously and took no breaks during the day, he began working at 4:32 a.m. While possible, the hours may be inflated.

ORDER – 13

distribution to the public, except pursuant to lawful written license or with the express authority of Plaintiff.

3. To the extent any such material exists, Defendants are directed to destroy all unauthorized copies of *London Has Fallen* in their possession or subject to their control.

4. Defendants are jointly and severally liable for statutory damages in the amount of $750.00.

5. Defendant Lynda Gueits is individually liable for attorneys' fees in the amount of $600.00 and costs in the amount of $92.00.

6. Defendant Chris Vanderyacht is individually liable for attorneys' fees in the amount of $600.00 and costs in the amount of $142.00.

7. Defendant Rachel Leonardini is individually liable for attorneys' fees in the amount of $600 and costs in the amount of $92.00.

8. Defendant Jonathan Coppetti is individually liable for attorneys' fees in the amount of $600.00 and costs in the amount of $142.00.

9. Defendant Gregorio Benitez Velasco is individually liable for attorneys' fees in the amount of $600.00 and costs in the amount of $137.00.

10. Defendant Luther Daniels is individually liable for attorneys' fees in the amount of $600.00 and costs in the amount of $92.00.

11. Defendant Kristin White is individually liable for attorneys' fees in the amount of $600.00 and costs in the amount of $92.00.

//

//

//

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment consistent with this Order.

DATED this 7 day of August, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 15